UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

KENDRICK DION MORRIS                                                            PLAINTIFF

V.                                                       CIVIL ACTION NO. 3:17-CV-41-DPJ-FKB

SHERIFF VICTOR MASON, ET AL.                                                DEFENDANTS

ORDER

This § 1983 action is before the Court on the Report and Recommendation [72] of Magistrate Judge F. Keith Ball. For the reasons detailed below, the Court finds the R&R should be adopted.

I.   Facts and Procedural History

On January 19, 2017, Plaintiff Kendrick Dion Morris, who at the time was a pretrial detainee, filed this suit challenging the conditions at the Hinds County Detention Center. He names 22 defendants and generally complains about the use of excessive force, unconstitutional conditions, and denial of medical care.[1] Compl. [1] at 2–12.

At a September 26, 2018 Omnibus Hearing before Judge Ball, Plaintiff somewhat clarified his claims. First, as to excessive force, Plaintiff described a February 8, 2017 incident where an unserved defendant, Corey Taylor, hit him with a flashlight. Omnibus Tr. [63-1] at 21–22. Plaintiff also said that on December 3, 2016, an officer used pepper spray in the zone (but did not spray Plaintiff) and failed to decontaminate the area. *Id.* at 18–20. Second, as to unconstitutional conditions, Plaintiff complained about mold, water leaking from sinks and toilets, ineffective air conditioning and heat, a leaking roof in a common area, limited access to hygiene products, and a lack of proper bedding (he had only half of a mat) for approximately

---

[1] Morris is now a state inmate in the custody of the Mississippi Department of Corrections.

three months. *Id.* at 6–11. And finally, Plaintiff clarified that his denial-of-medical-care claim stemmed from a tooth extraction on November 3, 2016, after which he "expected more . . . with the procedure of healing" such as "some type of antibiotic." *Id.* at 14.

Defendants filed a motion for summary judgment [64] challenging the merits of Plaintiff's claims and his failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA). Judge Ball recommended dismissing Plaintiff's claims for failure to exhaust, finding that: (1) Plaintiff never filed a grievance regarding the February 2017 excessive-force incident and (2) while he did file a grievance in December 2016 listing various complaints, he failed to complete the three-step process. R&R [72] at 3–4. Plaintiff objected to Judge Ball's R&R, claiming he never received a handbook detailing the grievance process. Obj. [73] at 2–3. Defendants declined to file a reply, and the time to do so has passed.

II.     Analysis

The PLRA, 42 U.S.C. § 1997(e), requires that an inmate bringing a civil action about prison life first exhaust his administrative remedies. *Whitley v. Hunt*, 158 F.3d 882 (5th Cir. 1998); *see Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[W]e hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). And the requirement that claims be exhausted prior to the filing of a lawsuit is mandatory and non-discretionary. *Gonzalez v. Seal*, 702 F.3d 785 (5th Cir. 2012).

That said, prisoners are only required to exhaust administrative remedies that are actually "available" to them. *Davis v. Fernandez*, 798 F.3d 290, 294 (5th Cir. 2015). An administrative remedy may be unavailable if (1) despite what regulations or materials may promise, prison officials are "unable or consistently unwilling to provide any relief to aggrieved inmates," (2)

"an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use" by an ordinary prisoner, or (3) prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Brantner v. Freestone Cty. Sheriffs Office*, 776 F. App'x 829, 833 (5th Cir. 2019) (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1859–60 (2016)) (alteration in *Branter*).

Here, Morris does not allege that prison officials took affirmative action to prevent him from taking advantage of the grievance process. Instead, he claims—for the first time in his Objection—that he "never received the adequate material throughout the process of booking." Obj. [73] at 2; *see* Resp. to Mot. [69] (failing to address exhaustion). And he asks "that the defendant provide documentation that the plaintiff received a handbook along with adequate materials that suppose [sic] to be given during booking." Obj. [73] at 3.

To begin, Morris should have raised this issue before Judge Ball entered his R&R. In *Cupit v. Whitley*, the Fifth Circuit noted that

> a party "has a duty to put its best foot forward" before the Magistrate Judge—i.e., "to spell out its arguments squarely and distinctly"—and, accordingly, that a party's entitlement to de novo review before the district court upon filing objections to the Report and Recommendation of the Magistrate Judge does not entitle it to raise issues at that stage that were not adequately presented to the Magistrate Judge.

28 F.3d 532, 535 n.5 (5th Cir. 1994) (quoting *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990–91 (1st Cir. 1988)). Morris's argument is untimely.

Alternatively, his argument fails on the merits. Notably, Morris does not claim that he was unaware of the grievance procedures, only that he did not receive a handbook; a fine distinction, but a distinction, nonetheless. Other courts have rejected similar allegations of non-receipt. In *Ruggiero v. County of Orange*, the Second Circuit Court of Appeals affirmed dismissal of an inmate's unexhausted claim despite his contention "that he was not timely

3

provided an inmate handbook." 467 F.3d 170, 178 (2d Cir. 2006). The court noted, "[w]hether or not [the inmate] actually possessed the handbook, he nowhere claims that he was unaware of the grievance procedures contained within it or that he did not understand those procedures." *Id.*

Likewise, in *Small v. Camden County*, the Third Circuit Court of Appeals found administrative remedies were "available" to an inmate who "knew of, and was able to access, [the facility's] grievance procedures," despite his contention that he did not receive a handbook. 728 F.3d 265, 271–72 (3d Cir. 2013). The court explained,

> Although Small continues to contend he did not receive a handbook until 2007, and therefore was unaware until then of the grievance procedures, we cannot help but observe that, among other things, he properly filed his first grievance form, fully compliant with those procedures, on August 30, 2004. Indeed, Small testified that by that time he knew of the procedures and the need to file a formal grievance. He also testified that although he had access to the law library, he never requested a copy of the handbook. Finally, although he claims that prison officials prevented him from accessing grievance forms, he testified that these alleged obstructionist efforts did not prevent him from obtaining a form, one way or another, when he needed one.

*Id.* at 272. Here, the record evidence suggests that even if Morris did not receive a copy of the inmate handbook, he was at minimum aware of the grievance process.

The Hinds County inmate handbook states that to initiate a grievance, "The inmate must request an Inmate Grievance Form by asking a Detention Officer for a grievance. The Detention Officer will ensure that the inmate receives the form." Handbook [63-5] at 17. Once complete, the form is forwarded to the warden, who provides a response. *Id.* at 17–19. If the inmate is dissatisfied, he may appeal the decision to an Appeal Hearing Detention Officer, and if still dissatisfied, he may file a final appeal with the Sheriff. *Id.* at 19. Morris must have requested the necessary form because he used the required Inmate Grievance Form to submit both his October 28, 2016 grievance (involving meeting with his attorney) and his December 5, 2016 grievance (detailing various complaints about the facility). Records [63-3] at 387; *cf.*, *Brantner*,

4

776 F. App'x at 834 (reversing dismissal for failure to exhaust where the inmate presented evidence that he was not given a handbook and that he requested grievance forms, but never received them).

In addition, at the Omnibus Hearing, Morris volunteered to read aloud a prior grievance, stating "I could read to you the grievance that I sent that I have a copy here, and it can pretty much give you a description of it." Omnibus Tr. [63-1] at 14. Also, Morris's Jail Records contain a June 30, 2017 request for "a copy of the policy of the Hinds County Detention Center (Jail)," with the notation that "Morris was issued [an] inmate handbook" that same day. Records [63-3] at 368. Admittedly, this was after filing suit, but it still suggests that Morris was aware of the grievance process and the existence of a handbook detailing that process and could have requested a copy sooner. *See Hanna v. Bossier Par. Corr. Ctr.*, No. 12-CV-0494, 2014 WL 2807647, at *4 (W.D. La. June 20, 2014) ("Plaintiff may not have possessed a copy of the Handbook after his discharge, but he does not deny that he was generally aware of the ARP provisions in the Handbook. . . . If he had any doubts about the details of the procedure, . . . he could and should have contacted Bossier authorities to ask for a copy of the ARP plan or inquire how to present a grievance on the beating claim.").

In sum, Morris's eleventh-hour claim that he did not receive the handbook does not excuse his failure to exhaust. Even assuming he did not receive a copy, he has not alleged that he was unaware of the process or that Defendants took some affirmative act preventing him from taking advantage of the process. Moreover, the record evidence suggests that he was both aware of and participated in the grievance procedure. Morris's claims are dismissed for failure to exhaust as required by the PLRA.

III.     Conclusion

The Court has considered all arguments raised by the parties; those not addressed would not have changed the outcome.  For the reasons stated, the Court finds the R&R [72] should be adopted as the opinion of the Court; Defendants' motion for summary judgment [63] is granted.  In addition, the Court accepts Judge Ball's recommendation that two named defendants, Corey Taylor and Larsey Davis, neither of whom have been properly served, be dismissed pursuant to Federal Rule of Civil Procedure 4(m).

Consistent with this Order, the Court finds this action should be dismissed.  A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 11th day of February, 2020.

              s/ *Daniel P. Jordan III*
              CHIEF UNITED STATES DISTRICT JUDGE